# NUGER, ᴇᴛ ᴀʟ. *v.* STATE INSURANCE COMMISSIONER

[No. 193, September Term, 1964.]

*Decided March 9, 1965.*

The cause was argued before HAMMOND, HORNEY, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Benjamin Lipsitz* for appellants.

*Loring E. Hawes, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City affirming an administrative decision of the State Insurance Commissioner which revoked the qualifications of the appellants to engage in the insurance business in Maryland. The appellants contend that the Commissioner's decision was unsupported by substantial evidence and against the weight of the evidence; that, as to two of the five charges made by the Commissioner, there was no hearing as provided by law; and that the Commissioner's action was in excess of his statutory authority and jurisdiction.

Three hearings were held by the Commissioner. The first two took place on April 24, 1962 on separate charges against two of the appellants, Caswell G. Nuger and Lillian S. Nuger. The third hearing, on May 11, 1962, was on charges against the Nugers and AA Insurance Agency, Inc. (the AA Agency), the third appellant, of which Mrs. Nuger was President and Mr. Nuger, Secretary-Treasurer. On June 1, 1962, the Commissioner rendered a consolidated decision, under five counts. His conclusion was as follows:

> "After considering all of the facts and testimony involved, it is my conclusion that Lillian Nuger, President, and Caswell G. Nuger, Secretary-Treasurer of AA Insurance Agency, Inc. have not observed the Laws of Maryland in conducting the affairs of this

brokerage firm, and that it is not in the public interest to permit Lillian Nuger, as President of AA Insurance Agency, Inc. and/or in her capacity as an individual; Caswell G. Nuger as Secretary-Treasurer of AA Insurance Agency, Inc. and/or in his capacity as an individual; or AA Insurance Agency, Inc., a corporate entity, to be again licensed to engage in the insurance business in the State of Maryland. It is further ordered that the qualifications of Lillian Nuger and Caswell G. Nuger to engage in the insurance business in the State of Maryland in any capacity are hereby revoked."

The appellants appealed from this decision, and the Commissioner's motion to dismiss the appeal was granted by the lower court on October 14, 1962, on the ground that it was not filed within thirty days from the order. On appeal, we reversed the judgment and remanded the case for further proceedings. *Nuger v. State Ins. Comm'r,* 231 Md. 543, 191 A. 2d 222 (1963). On March 30, 1964, the case was tried before Judge Sodaro, without a jury; at this hearing, additional testimony was offered by the appellants and admitted over objection. On April 3, 1964, Judge Sodaro wrote the parties that, upon consideration of the transcript of testimony before the Commissioner, the exhibits, and the testimony given at the court hearing, he had concluded to affirm the Commissioner's decision.

Article 48A of the Code (1957), (the old law) as in effect when the charges were filed against the appellants by the Commissioner and the hearings held before him, in 1962, was repealed, effective December 31, 1963, by Chapter 553, Acts of 1963, and was replaced by the Maryland "Insurance Code", Article 48A (Code, 1964 Replacement Volume), (the new law). If the Commissioner's decision was proper under the old law, the repeal and reenactment of the statute did not release or extinguish any penalty or forfeiture incurred thereunder. Code (1957), Article 1, Section 3. See *Brooks v. State Board,* 233 Md. 98, 195 A. 2d 728 (1963).

A question is presented as to whether the procedure in the hearing on the appeal in the lower court was governed by the provisions of the old law, under which the Administrative Pro-

cedure Act (Code, 1957), Article 41, Sections 255 (e) and (g) was applicable, or by Article 48A, Sections 40 (4) and (5) of the new law. The pertinent provisions of both the new and old laws are the same, except that Section 255 (e) of the Administrative Procedure Act provides for the taking of additional evidence by the court on appeal only under certain circumstances, and that Section 40 (4) of the new law provides that the court shall hear the matter de novo and shall consider the evidence before the Commissioner, together with such additional evidence as may be offered by any party to the appeal. The appellants contend that the procedural provisions of the new law prevail and that, under the section quoted, the burden is on the Commissioner to sustain the action taken by him. We do not agree with this interpretation of the new law. Section 40 (5) of that law provides, in the same language as that of the corresponding section of the Administrative Procedure Act, that the court may affirm the decision or remand the case, or reverse and modify, if the substantial rights of the petitioners may have been prejudiced for any of the reasons set forth. The history of the Administrative Procedure Act as well as its language, shows that the purpose of judicial review of administrative action in contested cases was to review that action under the criteria set forth, not to have a de novo judicial hearing which would take the place of the administrative process. 1, Davis, *Administrative Law Treatise* §1.04. Both the new and old laws, in our opinion, place the burden on the petitioners to show that the administrative proceedings prejudiced any of their substantial rights. The only difference we find in the two laws in respect of the procedure on appeal is that under the old law additional evidence could be offered in the judicial proceedings on the appeal only if the court were satisfied that the evidence was material and that there were good reasons for failure to present it in the administrative proceedings, whereas under the new law any party to the appeal may offer additional evidence as a matter of right. Taking Sections 40 (4) and (5) together, as we must, it is clear that this is the only meaning of "de novo" in Section 40 (4). In this case, all the additional evidence proffered by the appellants was admitted by the trial judge so that, in our view, it is immaterial which law was applicable to the appeal procedure.

The issues raised on this appeal can best be determined by a consideration of the administrative proceedings in chronological order. These proceedings were all under Section 111 of the old law. Section 111 read as follows:

"Whenever the Commissioner shall be satisfied that any insurance broker, broker's solicitor, agent or solicitor, licensed or registered by this State, has wilfully violated any of the insurance laws of this State, or has wilfully misrepresented any policies of insurance, or has dealt unjustly with or wilfully deceived, or dealt fraudulently with any insurance company or with any citizen of this State in regard to any insurance policy, or has failed or refused to pay over to the company or to his principal or other person whom he represents or has represented, or by or for whom he is employed or acts, any money or property in the hands of said agent, solicitor, broker or broker's solicitor belonging to said company, firm, broker, principal or person when demanded to do so, or has violated any ruling of the Insurance Department which he is by law authorized to make, or upon conviction of any infamous crime under the laws of this or any other state, or of the United States, or has been guilty of twisting or attempting to twist by misrepresentation any policy of insurance or has made any false statement, answer or declaration in his application for license, then and in any such case, the Commissioner may, and it shall be his duty to suspend or revoke the license of such broker or broker's solicitor, or suspend or revoke the license of any agent or solicitor for all companies which he represents in this State for such length of time as the Commissioner may think proper; provided, however, that before the Commissioner shall suspend or revoke said license he shall give ten days' notice of the charges in writing, to be served upon said broker, agent or solicitor in person or by registered letter to his last known address, or by copy of the charges left at his last known address, and provided an opportunity shall

be given the said broker, broker's solicitor, agent, or solicitor to be heard upon said charges, and the said broker, broker's solicitor, agent or solicitor shall have the right to have such suspension or revocation of license reviewed by the Superior Court of Baltimore City, when said offense occurred in Baltimore City, or by the circuit court of any of the counties of the State wherein such offense or offenses complained of occurred."

At the time of the hearings on April 24 and May 11, 1962, Mr. Nuger was licensed as an insurance agent, solicitor, and broker, and Mrs. Nuger was licensed as a broker. The AA Agency was licensed as a broker from May 1, 1960, to May 1, 1962, but its license had expired at the time of the hearing on May 11, 1962, and the record does not show that any application for a renewal of its license was then pending.

### The Getlan Complaint

The first hearing on April 24, 1962 was on a complaint filed with the Commissioner by Benjamin Getlan against Caswell G. Nuger. Mr. Getlan testified before the Commissioner that on August 17, 1961, he applied for a policy of automobile liability insurance through Mr. Groupp, of the Groupp Insurance Agency, and Mr. Groupp applied to Mr. Nuger for coverage for Mr. Getlan. This application, Mr. Getlan testified, was made by telephone in Mr. Getlan's presence. Mr. Groupp then gave Mr. Getlan a "UCJ 1" form indicating that Mr. Getlan was insured by National Mutual Insurance Company. In August, 1961, Mr. Getlan was involved in an automobile accident; he turned over the UCJ 1 form to the Department of Motor Vehicles. A short time later, he completed an accident report which he obtained from Mr. Groupp's office; Mr. Groupp was not then present but Mr. Nuger was. Mr. Nuger, according to Mr. Getlan, took the executed forms and stated he would have them completed and forwarded directly to the Department of Motor Vehicles. During the next several weeks, Mr. Getlan testified, he called Mr. Nuger almost every day and visited his office on numerous occasions in an effort to obtain a copy of his policy. Mr. Nuger repeatedly assured him that his policy would arrive

shortly from Washington. Mr. Getlan's son, an attorney, called the National Mutual Insurance Company in Washington and was informed that that company had no record of such a policy or an application for a policy. Mr. Getlan then went to the Department of Motor Vehicles and was informed that the accident report which he said he had given Mr. Nuger to file had not in fact been filed. Mr. Nuger stated, according to Mr. Getlan, that he had given the insurance application to another agent, who had failed to place the policy, and suggested that Mr. Getlan allow him to sue the other agent and the National Mutual Insurance Company. He also offered, according to Mr. Getlan, to pay for a financial responsibility bond and to obtain witnesses. Mr. Getlan rejected the offer. Mr. Getlan's son testified that, on his father's behalf, he had called Mr. Nuger several times and was told by him that the policy from National Mutual was slow in coming over.

Mr. Nuger denied telling Mr. Getlan that he was insured by National Mutual and asserted that he had told Mr. Getlan's son his father was not insured and never was. He denied issuing or signing the UCJ 1 form or any connection therewith. He admitted, however, that he had received the Department of Motor Vehicle accident report and had sent it in for Mr. Getlan, although, evidently, it was not received.

At the hearing before the lower court on appeal, Mr. Groupp, who had not appeared before the Commissioner, testified that he never gave the UCJ 1 form to Mr. Getlan and could not verify the signature which appeared on the back of the form. He testified further that he had not instructed anyone to issue the form to Mr. Getlan. On cross-examination, Mr. Groupp admitted that at the time referred to, he was not a solicitor or agent for National Mutual Insurance Company and that his insurance license had been revoked in November, 1962.

The credibility of the witnesses was originally for the Commissioner to determine. There was ample relevant testimony which, if believed by the Commissioner, as it evidently was, supported his finding that Mr. Nuger deliberately misrepresented to Mr. Getlan and his son that he was covered by a policy of automobile liability insurance with the National Mutual Insurance Company. As we have pointed out, the provisions in re-

spect of the judicial review set forth in the Administrative Procedure Act are applicable in this case, whether the old law is applicable, or whether the similar provisions in the new law apply. "While it appears that the scope of judicial review by a trial court of the findings, inferences, conclusions and decisions of administrative agencies under the statute has been broadened to some extent, it is clear that the statute [the Administrative Procedure Act] did not intend that the court should substitute its judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken (Citations omitted)." *Bernstein v. Real Estate Comm.,* 221 Md. 221, 230, 156 A. 2d 657 (1959), appeal dismissed 363 U. S. 419 (1960) ; *State Board v. Ruth,* 223 Md. 428, 436, 165 A. 2d 145 (1960).

It was for the lower court to decide the credibility and weight of the additional testimony before it. There was ample ground for the court to find, even in the light of the additional testimony, that the finding of the Commissioner that the Act had been wilfully violated was supported by competent, material and substantial evidence, in view of the entire record, and was not against the weight of the evidence.

## *The Utz Complaint*

The facts in respect of the charge brought against Mrs. Nuger alone in connection with this matter are virtually undisputed. Richard Leslie Utz, a minor, went to the AA Agency's office to obtain a JR 11 certificate. This is a Maryland Minor's Financial Responsibility Certificate to be filed with the Department of Motor Vehicles, which states that the minor has been issued a policy of liability insurance for the purpose of complying with the Maryland Automobile Financial Responsibility Act. Utz testified he was given the certificate in the Nuger's office. The certificate was executed over the signature of Mrs. Nuger as an authorized representative of Southern General Insurance Company and stated that Utz was insured by that company. Mrs. Nuger denied that the signature was hers. She admitted the certificate was signed in her office but stated that the signature of her name was by an employee who had signed the form without her authority. Mrs. Nuger testified that the

certificate is issued when the application is taken and immediately thereafter the application is sent to the office of Leonard R. Shope, general agent for the Southern General Insurance Company. Ordinarily, the policy of insurance on the application is issued after seven or eight days. The company generally issues the policy promptly but, if the credit report and other reports are unfavorable, it subsequently cancels the policy. In this case, the Southern General Insurance Company informed the Department of Motor Vehicles that Mrs. Nuger was not an agent for the insurance company and that there was no policy in effect insuring Utz. The AA Agency, which was the Nugers' brokerage firm, had been doing business with Mr. Shope for more than a year. Mr. Shope testified that he had furnished the Nugers with policy numbers and signed applications and had authorized the firm to fill out the JR 11 form with Mr. Shope's signature. Mr. Nuger, but not Mrs. Nuger, was licensed as an agent of the Southern General. Utz had been issued an instruction permit when he filed the JR 11 form; upon receipt of the notice from the Southern General that Mrs. Nuger was not its agent, Utz's permit was cancelled. Several months later, a valid and acceptable JR 11 form under Mr. Shope's signature was duly filed with the Department.

The charge against Mrs. Nuger was wilful violation of the statute. That she was negligent is apparent. That negligence consisted in permitting her signature to be affixed by some employee when she was not an agent of Southern General, without appropriate instructions to or supervision over the employee, and, inferentially at least, in failing to check what had been done in her office for several months. However, Mr. Nuger had authority to issue a valid certificate in Mr. Shope's name and when the mistake was belatedly discovered, a proper certificate was issued through the Nugers' office.

Negligence of itself is not one of the grounds stated in Section 111 for the revocation or suspension of a license. Section 121 of the old law dealt with the qualifications of fire and casualty agents and solicitors and provided that before the Commissioner shall issue a license, he shall require the applicant to satisfy him that the applicant had sufficient education and experience in the insurance business. It is unnecessary to consider

whether negligence of a licensed solicitor would justify the Commissioner in refusing an application to renew the license, for the charge against Mrs. Nuger was expressly based upon her alleged wilful violation of Section 111.

The term "wilful violation" as used in Section 111 clearly means an intentional act of omission or commission. See *Schwebell v. Orrick*, 153 F. Supp. 701 (D.C.D.C. 1957). "Wilfulness" and "negligence" are not synonymous terms. *Rideout v. Winnebago Traction Co.*, 123 Wis. 297, 303, 101 N. W. 672 (1904); *Southern Railway Co. v. Davis*, 132 Ga. 812, 815, 65 S. E. 131 (1909); *Cook v. Big Muddy Mining Co.*, 249 Ill. 41, 51, 94 N. E. 90 (1911); *In re Cunningham*, (N.D.N.Y. 1918) 253 F. 663, 665. There was no evidence before the Commissioner or the lower court to show that Mrs. Nuger was more than negligent or to sustain a charge of wilful violation in the sense that she intended to violate the statute. The Commissioner's finding in respect of this charge therefore was unsupported by competent and substantial evidence and was against the weight of the evidence and the lower court's finding to the contrary can not be sustained.

## The Alleged Failure to Pay Premiums Due

This charge, based on the specific wording of Section 111 of the old law, was brought against Mrs. Nuger as President of the AA Agency; Mr. Nuger as its Secretary-Treasurer; the AA Agency; and the Nugers individually. Much testimony was taken before the Commissioner at the hearing on May 11, 1962 in respect of the charge and additional testimony was taken before the lower court on appeal.

The salient elements of the case against the appellants may be summarized as follows: The AA Agency was licensed as a resident broker in Maryland from May 1, 1960 to May 1, 1962 and the Nugers were granted authority on the AA Agency's license to act for it. Mr. Nuger was licensed to act as a solicitor for National Mutual Insurance Company of D. C. (the Washington Company); James P. McCloskey was licensed as an agent of the Washington Company from July 1, 1960 to June 30, 1961. In December, 1961, the National Mutual Company of Maryland, Inc. (the Maryland Company) took over the as-

sets of the Washington Company. An audit by the Commissioner of McCloskey's accounts as agent for the Washington Company for the months of March through June of 1961, showed a premium balance due and owing from the AA Agency to McCloskey and that McCloskey owed premiums to the Washington Company. McCloskey advised the Washington Company and the State Insurance Department of Maryland that he had been unable to collect certain premiums due under policies written through the AA Agency. On August 29, 1961, the Commissioner wrote the Nugers and the AA Agency informing them of the dispute between the Washington Company and McCloskey and asking for a detailed statement of the policies issued; the premiums collected on policies the Washington Company had issued to or by the AA Agency for the period beginning March 1, 1961; a statement of the amounts which had been remitted either to the Washington Company or its agent in respect of such premiums; and a detailed statement of any credits applicable to these specific accounts. No reply to this letter was received prior to the hearing on May 11, 1962. The Commissioner's audit showed that the premium balance due from the AA Agency to McCloskey was secured by one note for $3,000 and six notes for $1,000 each, in the total amount of $9,000; these notes were made by Mr. Nuger payable to the Maryland Company. The testimony indicated that the $9,000 was the agreed balance due from the AA Agency to the Washington Company at the time the Maryland Company took over the Washington Company's accounts. The notes were all dated December 14, 1961 and the maturities ranged from fifteen days to one hundred and eighty-eight days. The President of the Maryland Company testified that none of the notes had been paid in full. The Treasurer of the Maryland Company testified that the premium balances totaling $9,000 were for policies that the AA Agency and its principals, Mr. and Mrs. Nuger, acting as insurance brokers, had placed through McCloskey, as agent for the Washington Company, and that between December 1 and December 14 of 1961 the Maryland Company had demanded the payment of the past due premium balances of the AA Agency from that Company and the Nugers and that the balances had not been paid. The Maryland Company had made an effort to

collect the balance due on these notes but had not been successful, except for payments totaling $2400.

Mr. Nuger testified that credits due him under a contract between him and the Maryland Company would more than offset the balance of the indebtedness evidenced by the notes. The contract referred to, however, provided that Mr. Nuger was to obtain a solicitor's license to act for the Maryland Company, which he did not have during the time he claims benefits under the contract for acting as a solicitor.

The Nugers also contend that while the amounts were due from the AA Agency in May, 1962, in June or July of that year Mr. Nuger entered into an agreement with the Maryland Company for payment and that the payment was "waived" "in lieu of the contract" because the Maryland Company wanted the volume produced by the AA Agency. The so-called "waiver" was subsequent to the hearing before the Commissioner and the Commissioner's decision.

The precise respective rights and liabilities of Mr. and Mrs. Nuger, the AA Agency for which they acted, and the Washington and Maryland Companies, were not before the Commissioner or the lower court for adjudication, but the involved dealings were pertinent to show whether or not the Nugers, on behalf of the brokerage concern for which they acted and which they controlled, had failed or refused to pay premiums which they had collected to the insurer or its agent. The licensing provisions of the law are for the protection of the public. *Goldsmith v. Manufacturers' Liability I. Co.,* 132 Md. 283, 289, 103 Atl. 627 (1918). See also *Smirlock v. Potomac,* 235 Md. 195, 200 A. 2d 922 (1964) holding that similar licensing provisions in respect of real estate brokers are regulations for the benefit of the public; and *Snodgrass v. Immler,* 232 Md. 416, 194 A. 2d 103 (1963) in which there was a similar holding in respect of the licensing of architects. See also *Babb v. Bolyard,* 194 Md. 603, 608-09, 72 A. 2d 13 (1950) in which Judge Markell, for the Court, discussed the difference between the scope of common law actions, such as deceit, and the purposes of enactments for the benefit of the public, such as the Federal Securities Act and the Maryland Retail Installment Sales Act.

While there was some conflict in the testimony as to the complicated dealings between the various companies and the Nugers and the amounts still due by them, or either of them, in connection with their brokerage company's indebtedness, there was substantial evidence on which the Commissioner could properly have found that at the time of the hearing on May 11, 1962, both Mr. and Mrs. Nuger had been deliberately derelict in the performance of their duties in the prompt payment of premiums collected by them, which the Act required of them for the protection of the public. The public has an interest in the prompt transmittal of premiums paid for insurance policies, so that the coverage of the policies for which payment has been made will be assured. There is also a public interest, recognized by the statute, in the administrative supervision of the persons licensed by the Commissioner, who are entrusted with the collection of the premiums and the securing of the policies.

Mrs. Nuger could not evade the responsibility inherent in her position through the acceptance of notes of Mr. Nuger, which were not paid when due. There was substantial evidence that the Nugers had been guilty of the wilful violation of Section 111 and a finding that their licenses should be revoked was supported by the entire record. The court below, even with the additional testimony given before it, had ample basis to make a similar finding. The effect, if any, of the Commissioner's finding in respect of the AA Agency will be considered hereafter.

### The Fourth and Fifth "Counts"

In the Commissioner's consolidated decision of June 1, 1962, he included a so-called Fourth Count, stating that the Department had received a cancelled check, payable to the AA Agency, from a Mr. Powell; that no policy of insurance had ever been delivered to Mr. Powell by that company, and that a letter to the AA Agency demanding an explanation of the situation remained unanswered. In his Fifth Count, the Commissioner stated that an inquiry at the office of the National Mutual Insurance Company of Maryland, Inc. showed that the AA Agency had been holding itself out as an insurance broker in the State of Maryland during the month of May, 1962 and had taken applications for insurance and collected premiums without being licensed so to do.

No notice of a hearing on either of these matters was ever given to the Nugers or to the AA Agency and no hearing on either of the matters was held. Notice of charges in connection with proposed suspension or revocating of licenses and a hearing on the charges were expressly provided for in Section 111, and in any case are required by fundamental principles of fairness in administrative procedures. *Ulman v. Baltimore,* 72 Md. 587, 20 Atl. 141 (1890). See *Cassidy v. Board of Appeals,* 218 Md. 418, 421, 146 A. 2d 896 (1958); Cohen, *Some Aspects of Maryland Administrative Law,* 24 Md.L.Rev. 1, 8-15 (1964). Any action in respect of the charges referred to in these "Counts" was nugatory.

## The Action of the Commissioner

In his consolidated decision, the Commissioner stated his conclusions: first, that Mr. and Mrs. Nuger had not observed the laws of Maryland in conducting the affairs of the AA Agency; and second, that it is not in the public interest to permit either Mr. or Mrs. Nuger as an officer of that company, or individually, or the AA Company, as a corporation, to be again licensed to engage in the insurance business in Maryland. He then ordered that the qualifications of both Mr. and Mrs. Nuger to engage in the insurance business in Maryland are revoked.

A person's qualifications are his character, education and experience. The qualifications of a person may be deemed sufficient or insufficient for the granting or renewal of licenses, but insufficient as the Commissioner obviously deemed the qualifications to be in this case, he could not effectively revoke them anymore than he could effectively revoke the color of a man's hair. What the Commissioner obviously had in mind, in part, in his order, as Judge Henderson inferred in his opinion for the Court, in *Nuger v. State Insurance Commissioner, supra,* was a declaration for the future, if and when there was a request for a renewal of a license. The law here considered, however, contains no authorization for an administrative order similar to that of a judicial declaratory judgment. While the scope of a delegation of legislative power to administrative officers has been liberally construed, there is no basis in the law for such an implied delegation to the Commissioner in what the Ad-

ministrative Procedure Act designates a contested case. See Cohen, *op. cit.,* 24 Md. Law Rev. at 3-15 and cases therein cited.

The discussion of the specific charges by the Commissioner in his decision of June 1, 1962 makes it apparent that he was convinced there had been a wilful violation of the statute under each of the first three charges. The notices given the appellants clearly show that the proposed action against them for the violations, if proved, was to be taken under Section 111, which provided for the revocation of licenses. The Commissioner acted in excess of his authority in making provision for future applications for licenses but the record as a whole, as well as the specific language of the conclusions, makes it clear that, at the very least, he intended to revoke the appellants' licenses.

Both Mr. and Mrs. Nuger had licenses at the time of the hearing but the AA Agency had no license of any kind at the hearing against it and no application by it for a renewal of a license was then pending. Any action against the AA Agency, therefore, as a result of the hearing, was beyond the Commissioner's authority; the evidence adduced could only be considered if and when the AA Agency filed an application for a license, or for a renewal of a license. See *State Board v. Ruth, supra.*

We have found that there was not sufficient evidence to sustain the Commissioner's action or the action of the lower court affirming him in respect of the charge against Mrs. Nuger alone in connection with the Utz complaint. We have also found that there was ample evidence before the Commissioner as to the revocation of the license of Mr. Nuger on the Getlan complaint, and the revocation of the licenses of both Mr. and Mrs. Nuger in connection with the failure to pay premiums, and that the lower court's affirmance of these charges was amply supported by competent testimony and the weight of the testimony.

The procedural provisions of both the old and new laws provide for judicial modification of the Commissioner's decision on appeal. See also Maryland Rule B12. Because of the incorrect form of the Commissioner's order, affirmed by the lower court; the erroneous conclusion in the Commissioner's decision in reference to matters in the "Fourth and Fifth Counts," and the erroneous finding against Mrs. Nuger in connection with the

Utz complaint, we are constrained to reverse the decision of the lower court and to remand the case for the entry of such order or orders in connection with Mr. Nuger under the Getlan complaint and in connection with Mr. and Mrs. Nuger under the complaint in respect of failure to pay premiums, as the court may deem proper in accordance with this opinion.

> *Order reversed; case remanded to the Superior Court of Baltimore City for the passage of an order consonant with this opinion; one-half of the cost of this appeal to be paid by Mr. and Mrs. Nuger, and one-half by the State Insurance Commissioner.*