40 Md. App. 201 (1978)
389 A.2d 422
GOVERNMENT EMPLOYEES INSURANCE COMPANY
v.
INSURANCE COMMISSIONER OF MARYLAND.
No. 1344, September Term, 1977.
Court of Special Appeals of Maryland.
Decided July 18, 1978.
The cause was argued before GILBERT, C.J., and MELVIN and COUCH, JJ.
Thomas Waxter, Jr., with whom were Alan N. Gamse, J.D. Ruff and Semmes, Bowen & Semmes on the brief, for appellant.
*202 Richard J. Brooks, Assistant Attorney General, with whom was Francis Bill Burch, Attorney General, on the brief, for appellee.
GILBERT, C.J., delivered the opinion of the Court.
Insurance,[1] it has been said, is something like gambling  you bet against yourself while the insurance company[2] bets on you. This appeal arises because Government Employees Insurance Company (GEICO) refused to "cover," by way of policy renewal, the "bet" placed by Leonard and Audrey K. Frank on an automobile, titled in the name of the Franks, but actually operated by their son, Alan. Alan did not live with his parents, and he maintained possession of the vehicle. During the period May 27, 1975, through June 22, 1976, Alan amassed four (4) speeding violations. Three (3) of them were for exceeding the posted speed limit by more than ten (10) miles per hour. GEICO's underwriters were of the view that the "odds" were that Alan was a serious accident waiting to happen, and thus, it notified the Franks of the non-renewal of the policy it had previously issued on the automobile that Alan exclusively used. The Franks complained to the State Insurance Commissioner (Commissioner), who directed that a hearing be held on GEICO's refusal to renew. As a result of that hearing, the Commissioner ordered GEICO to "cover" the Franks' "bet" in the form of a renewal of the policy and to surcharge the Franks for the additional risk that GEICO was assuming by continuing to insure the vehicle driven by Alan. GEICO, firmly of the belief that the Commissioner had misinterpreted the law and consequently exceeded his authority, appealed to the Baltimore City Court.[3] There, Judge Basil A. Thomas agreed with the Commissioner's concept of the law and also held that GEICO had not properly furnished notice of non-renewal to the Franks.
Unshaken in its conviction that the Commissioner was wrong, and that the court incorrectly affirmed the erroneous *203 decision, GEICO has brought its grievance to us. In this Court, GEICO asks five (5) questions.[4] Because of our view of the case, we find it unnecessary to discuss more than two of the issues raised, i.e., part of question one and all of question three, which we treat as one. Before doing so, however, we shall sketchingly set the stage from which this drama unfolded.
Neither Alex Haley[5] nor any other genealogist is needed to determine that the "roots" of civil appeals are ordinarily found in the financial difficulties of one of the parties litigant. The "roots" of the case sub judice have grown from GEICO's fiscal embarrassment. Early in the 1970's, GEICO was in serious financial straits as a result of staggering underwriting losses that occurred in 1974 and 1975. The loss for 1975 alone was $191,000,000, and in the words of its brief in this case, "For many months, it was touch and go whether GEICO would survive." The Superintendent of Insurance of Washington, D.C., GEICO's home base, ordered that the company "reduce the number of its automobile policies over a two-year period by 40%."
*204 Seeking to improve its financial condition, GEICO applied to the Commissioner in June 1976 for a twenty-one point nine (21.9) per centum increase in its automobile insurance premium charges. After a hearing thereon, the sought rate hike was rejected. GEICO then promptly requested a more modest ten (10) per centum rate increase and submitted "a merit-demerit surcharge plan." The plan proposed the lowering of premiums for violation-free drivers, while surcharging those drivers who had accumulated what may be characterized as bad driving records.[6] On August 25, 1976, the chairman of the board of GEICO explained in a letter to the Commissioner that:
"We [GEICO] intend that the Driver Record Rating Plan will `re-distribute' our premium income among the good and the bad drivers, and the premium received by the Company will remain the same.
"It is our expectation that the volume of our non-renewal activity in Maryland will be reduced as a result of the implementation of this Plan." (Emphasis supplied.)
The Commissioner responded to GEICO's chairman in a letter dated September 1, 1976, noting his approval of the Plan, with the following qualifying comment:
"Approval [of the rate increase and surcharge plan] is based on assurance that the rates will be applied in order to expand the market for automobile insurance in this state and that cancellation and insurance [non-]renewal will not be made where rates for the applicants rates is [sic] provided." (Emphasis supplied.)
GEICO's chairman answered in a letter dated September 2, 1976 by stating:
"We note that your approval is based on our prior assurance that the rates will be applied in order to *205 expand the market for automobile insurance by lessening the rate of our non-renewals in the State of Maryland. As I previously indicated to you, it is our intention through the implementation of the above changes to materially reduce the volume of this Company's non-renewal activity in the State of Maryland." (Emphasis supplied.)
GEICO subsequently revised and filed with the Commissioner on December 14, 1976 its "Maryland Reunderwriting Standards" with the expectation that the "guidelines will allow GEICO to renew substantially more policies than was possible under the previous standards." The reunderwriting guidelines stated in pertinent part:
"With the adoption of a Demerit system in Maryland, we must take a different reunderwriting approach to the treatment of accidents and violations. Some previous undesirable risks become acceptable with Demerit rating, while some risks are not desirable even with a Demerit system. These latter risks are the ones to be identified and non-renewed or the named driver exclusion used.
VIOLATIONS Individuals having the following violations within the 39 months[[7]] prior to expiration are to be considered undesirable and should be considered for non-renewal, if the only driver on the policy, or the named driver exclusion used:
...
9) three moving violations"
*206 The Commissioner, on January 28, 1977, by letter, granted his approval of GEICO's modified automobile insurance rates and classification procedures.
The Franks became involved in this matter as the direct result of a questionnaire mailed to them by GEICO on March 8, 1977. The questionnaire concerned the policy of insurance issued on a 1976 Pontiac LeMans owned, as we have previously set forth, by Mr. and Mrs. Frank, but used exclusively by their son, Alan, age twenty-one (21), who did not live with his parents. Leonard Frank answered, signed, and returned the questionnaire to GEICO. Mr. Frank's response indicated that no automobile accidents or violations had occurred. GEICO's review, on March 22, 1977, of the driving record of Alan, as maintained by the Motor Vehicle Administration, revealed that Alan had, in fact, accumulated four (4) speeding tickets within the preceding two (2) years. Three (3) of the violations were after he had completed a driver's clinic.[8] A week later, GEICO wrote to the Franks by certified mail that:
"You are hereby notified of the following action concerning your automobile insurance: (Action marked "X" applies)
...
[x] Non-Renewal: This is notice this policy cannot be renewed and is terminated at 12:01 AM on May 22, 1977."
*207 Thereafter, in the form letter notice appears:
"Reason(s) or explanation for the above action:
Alan J. Frank's driving record.
His violations of:

 June 22, 1976  speeding
 May 15, 1976  exceed speed limit by 10 MPH
 April 2, 1976  exceed speed limit by 10 MPH
 May 27, 1975  exceed speed limit by 10 MPH"

The Franks were advised by GEICO that they had a "right to protest ... [the] action and request a hearing thereon before the Commissioner ... within 15 days after receipt of this notice." Mr. Frank exercised the right within two (2) days.
The Commissioner, as we have already noted, directed GEICO to continue to insure the Franks' Pontiac automobile and, thus, afford coverage to Alan. The question of the validity vel non of the notice of non-renewal was not raised in the administrative proceeding, nor was it addressed. When GEICO's appeal reached the Baltimore City Court, the Commissioner did inject the matter of an invalid non-renewal notice into the case. GEICO asserts that the intromission of the notice question before the trial court was improper, but we view it differently. We do so because Md. Ann. Code art. 48A, § 40 (4) provides:
"Upon receipt of such transcripts and evidence [from the Commissioner] the court shall hear the matter de novo as soon as reasonably possible thereafter. Upon the hearing of the appeal the court shall consider the evidence contained in the transcript, exhibits, and documents therein filed by the Commissioner, together with such additional evidence as may be offered by any party to the appeal."
Section 40 (5) of article 48A, the Insurance Code, permits the trial court to affirm, remand for further proceedings, reverse or modify the decision of the Commissioner. The *208 Court of Appeals, in Nuger v. Insurance Comm'r, 238 Md. 55, 207 A.2d 619 (1965), made clear that Md. Ann. Code art. 48A, § 40(4) and § 40(5), must be read together. That reading, the Court said, means that additional evidence may be offered "as a matter of right" on appeal to the trial court, from the decision of the Commissioner. 238 Md. at 61, 207 A.2d at 622. If, as here, the Commissioner could demonstrate to the trial court that the notice of non-renewal failed to comply with the statutory mandate of Md. Ann. Code art. 48A, § 240AA (b) (iii), there appears to be no reason why he could not raise the issue as an additional ground for the affirmance of his decision. We think that at that point the trial court could have remanded the matter to the Commissioner for the taking of further evidence or proceeded, as it did, de novo. Moreover, the fact that the Commissioner raised the issue "one day prior to the actual hearing of the appeal before the Baltimore City Court" does not cause the issue to be stricken from consideration. GEICO could have requested a remand to the Commissioner for the purpose of taking testimony and a finding of fact thereon, or it could, as it did, proceed before the court and present evidence to refute the allegation. We perceive no error in Judge Thomas's permitting the case to proceed before him with the additional issue being joined.
With respect to cancellation or non-renewal of an automobile insurance policy, Md. Ann. Code art. 48A, § 240AA (b) (iii)[9] provides:
"(b) ... An insurer intending to take an action subject to the provisions of this section shall, on or before forty-five days prior to the proposed effective date of the action, send written notice by certified mail of its intended action to the insured at his last known address. The notice shall be in triplicate, and *209 shall state in clear and specific terms, on a form approved by the Commissioner:
...
(iii) The insurer's actual reason or reasons for proposing to take such action. The statement of reasons shall be sufficiently clear and specific so that a person of average intelligence can identify the basis for the insurer's decision, without making further inquiry. Generalized terms such as "personal habits," "living conditions," "poor morale," or "violation or accident record" shall not suffice to meet the requirements of this section....
...
(f) ... The insurer shall have the burden of proving its proposed action to be justified, and, in doing so, may rely only upon the reasons set forth in its notice to the insured."
There is no dispute about the fact that GEICO sent written notice to Leonard and Audrey Frank, by certified mail, on or before forty-five (45) days prior to the proposed effective date of its non-renewal of the automobile policy covering the 1976 Pontiac.
Albeit, the form of the notice GEICO used was approved by the Commissioner, the court determined that the notice did not "state in clear and specific terms" GEICO's "actual reason or reasons for proposing to" non-renew the Franks' insurance coverage on the automobile operated by Alan. GEICO contends, however, that the notice was sufficient to inform Alan of the reason for the non-renewal inasmuch as Alan "knew what his driving record was." That argument overlooks the fact that Alan was not the policy owner nor was the notice addressed or mailed to him. The notice, as we have seen, was sent to "Leonard and Audrey K. Frank." GEICO's underwriter, David C. Westlein, testified before the court that GEICO's rationale for non-renewing Alan's coverage, "was his four speeding tickets within the two years preceding our notice to him.... [A]nd also about the fact that three of them *210 were received after he [Alan] had attended a rehabilitation clinic." (Emphasis supplied.) The notice received by the Franks, however, assigns as the reason for non-renewal "Alan J. Frank's driving record," followed by a summary of Alan's motor vehicular violations accruing within three (3) years prior to the notice. Absent from the notice is any explanation that GEICO's reason for the non-renewal was the frequency of the violations within a two (2) year period, or that three (3) of the violations occurred after Alan had attended a driver's clinic. According to an underwriting consultant for GEICO during the time relevant to this case, Alan was qualified as a permissible risk under GEICO's reunderwriting guidelines, subject to "a surcharge factor ... to make the base more accurate," despite his four (4) speeding violations. No explanation, however, was provided in the notice of the additional factors testified to by Westlein, upon which GEICO based its determination of non-renewal. No showing was made as to why Alan differed from other insured motorists with similar records whom GEICO chooses to surcharge rather than non-renew.
It is perspicuous that Judge Thomas believed that GEICO's statement of reasons in the notice to the policy holders, Leonard and Audrey K. Frank, did not adequately inform them of the "actual reason or reasons" for proposing not to renew their automobile insurance coverage of the Pontiac, and that the statement of reasons was not "sufficiently clear and specific so that a person of average intelligence ... [could] identify the [actual] basis for the insurer's decision, without making further inquiry." Md. Ann. Code art. 48A, § 240AA (b) (iii).
Plainly, GEICO's stated reasons to the Franks for non-renewal were not, as the testimony before Judge Thomas revealed, all the reasons why it elected not to renew the policy. GEICO's written explanation fell short of being the "actual reason or reasons" and thus was non-compliance with section 240AA (b) (iii).
The net result of GEICO's failure to obey the clear legislative mandate of section 240AA is that under the *211 provisions of section 240D they remain liable to the Franks for the coverage.[10]
While not mentioned by the trial court, the Commissioner or GEICO, there is another statutory reason why the non-renewal, in this case, was non-effective. We refer to Md. Ann. Code art. 48A, § 240C-1. That section provides:
"(a) In any case where an insurer is authorized under this article to cancel or nonrenew or increase the premiums on an automobile liability insurance policy under which more than one person is insured because of the claim experience or driving record of one or more but less than all of the persons insured under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium increase offer to continue or renew the insurance, but to exclude from coverage by name, the person or persons whose claim experience or driving record would have justified the cancellation or nonrenewal. The premiums charged on any such policy excluding a named driver or drivers shall not reflect the claims experience or driving record of the excluded named driver or drivers.
(b) With respect to any person excluded from coverage under this section, the policy may provide that the insurer shall not be liable for damages, losses, or claims arising out of the operation or use of the insured motor vehicle, whether or not such operation or use was with the express or implied permission of a person insured under the policy...." (Emphasis supplied.)
*212 The automobile policy in the case sub judice was issued to Leonard and Audrey K. Frank. Apparently, GEICO found no fault with their respective driving records but pointed the finger of accusation solely at their son, Alan. Any reading of section 240C-1 manifests that GEICO was required to offer Mr. and Mrs. Frank a renewal of the policy, excluding therefrom coverage of Alan. It is clear from the record that no such offer was made to the Franks notwithstanding the unmistakable clarity of section 240C-1. For that reason alone, the trial court or the Commissioner would have been justified in holding that GEICO's attempted non-renewal was self-aborted and consequently, of no effect.
At oral argument, counsel for GEICO recognized the failure of the notice to meet the requirements of the Code with respect to non-renewal of the policy but, nevertheless, requested this Court to consider the merits of GEICO's appeal in order to provide guidance for insurers and the Commissioner so as to avoid future conflicts over the effect of section 234A. We decline to sail the course that GEICO would chart for us as any opinion by this Court on the merits of GEICO's appeal would constitute unadulterated advisory dicta, which "whether it be wise or foolish, right or wrong, bindeth none  not even the lips that utter it,"[11] nor the hand that penned it.
Judgment affirmed.
Costs to be paid by appellant.
NOTES
[1] The word "insurance" came into the English language in 1649, according to Stuart Berg Flexner, I Hear America Talking: An Illustrated Treasury of American Words & Phrases 161 (1976).
[2] "Insurance company" had its debut in 1784. Id.
[3] Md. Ann. Code art. 48A, § 40 (1).
[4] GEICO asks:

"1. Is the action of the Baltimore City Court and of the Insurance Commissioner supported by the competent, material, and substantial evidence in view of the entire record, including the de novo evidence, and in view of the requirements of Section 234A (a) of Article 48A of the Maryland Annotated Code?
2. Is the action of the Baltimore City Court and of the Insurance Commissioner in excess of the Insurance Commissioner's statutory authority in requiring GEICO to retain all risks eligible for a surcharge rate under the surcharge classification system?
3. Did GEICO comply with the Notice Provisions of the Insurance Code?
4. Is the action of the Baltimore City Court and of the Insurance Commissioner in violation of the Due Process Clause of the United States' Constitution in requiring GEICO to continue to write an insurance risk which is admittedly beyond any company's statistical underwriting capability?
5. Is the action of the Baltimore City Court and of the Insurance Commissioner in conflict with the public policy of this state which is expressed in the Maryland Automobile Insurance Fund?"
We observe that neither GEICO's fourth (4th) nor fifth (5th) question was raised or decided in the trial court, nor were they raised and decided before the Commissioner. They appear before us in virginal form and as such are improperly here. Md. Rule 1085.
[5] Mr. Haley is the author of the best selling novel, Roots (1976).
[6] We do not attempt to define what constitutes a "bad driving record," for it, like beauty, is largely in the eyes of the beholder and depends upon a number of divers factors.
[7] By 1977 Md. Laws, ch. 314, effective July 1, 1977, Md. Ann. Code art. 48A, § 234A was amended by the addition of subsection (d). Md. Ann. Code art. 48A, § 234A (d) (1) provides that an insurer may not "[c]ancel, refuse to renew or otherwise terminate coverage for any automobile insurance risk because of the existence of a traffic violation or accident more than three years old on the date the policy or renewal is effective...."
[8] We infer that the driver clinic was held under the auspices of the Motor Vehicle Administration. The entry upon Alan's driving record is as follows:

"08-08-75 COMPLETED DRIVER CLINIC"
In August 1976, Alan was reprimanded by the Motor Vehicle Administration. No violations appear on the record subsequent to June 22, 1976, at which time Alan was found guilty of "speeding."
[9] Enacted by 1972 Md. Laws, ch. 73, effective January 1, 1973, as part of a massive revision of the Maryland automobile liability insurance laws. By 1974 Md. Laws, ch. 765, effective July 1, 1974, section 240AA was amended by the addition of subsection (c-1) requiring that an insurer "promptly send to the Motor Vehicle Administration a copy of any notice to cancel or not renew a motor vehicle liability insurance policy."
[10] When counsel entered the picture on behalf of GEICO, he was confronted with a fait accompli in the form of the failure of GEICO to comply fully with the cancellation or non-renewal provisions of the regulatory statute. The tools of the lawyer are his knowledge, resourcefulness, and his ability to articulate the principles of law involved. Notwithstanding his acumen or the expertise by which he applies his craftsmanship, he still must build upon the foundation of facts as they happened. Although he may be able to present those facts in a more favorable light, he, nevertheless, possesses no magical power to change them. When the factual predicate establishes clearly that his client erred, the lawyer may endeavor to explain away the error, but he cannot undo acts that his client has performed. That task is left to the fictional Mandrake or the legendary Houdini.
[11] The Old Judge, as it appears on the title page of Birrell, Obiter Dicta (1885).