500 A.2d 297

**INSURANCE SERVICE MANAGEMENT, INC., et al.**

v.

**Edward H. MUHL, Insurance Commissioner of the State of Maryland.**

No. 294, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Nov. 14, 1985.

Louis James Morse, Silver Spring (Bonnett & Morse, Silver Spring, on the brief), for appellants.

Kathleen M. Sweeney, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen. and Lynn Goldman Mathias, Asst. Atty. Gen., Baltimore, on the brief), for appellee.

Argued before GILBERT, C.J., and WILNER, and ADKINS, JJ.

WILNER, Judge.

The question before us is whether the Circuit Court for Montgomery County erred when it modified, and then affirmed as modified, an order of the Insurance Commissioner revoking the insurance licenses of appellants Insurance Service Management, Inc. and John G. Nocerino. We shall affirm the judgment of the Circuit Court.

The appellants are essentially one and the same. Nocerino operated an insurance agency in Silver Spring through the corporation.

Appellants' difficulties arose from their relationships with six different entities: two insurance companies (Monarch Insurance Co. and Rockwood Insurance Co.), three clients (Bootlegger, Inc., A & A Himes Decorating and Painting Co., and T.I.A.B. Corporation), and one premium finance company (TIFCO). In August, 1983, they were charged with eight violations of the Insurance Code, stemming essentially from their failure to pay amounts due to the two insurance companies and TIFCO and from their issuance of

several checks drawn on insufficient funds. Specifically, they were charged with:

(1) In June, 1983, fraudulently completing a premium finance agreement in the name of Bootlegger and retaining the proceeds of $6,531 in their account in violation of Md.Code Ann. art. 48A, § 175(1), (4), (6), (11), (12), and (13); [1]

(2) In June, 1983, failing to maintain a sufficient balance in their checking account and proffering a check for $3,834 to TIFCO drawn on insufficient funds, in violation of § 175(4), (12), and (13);

(3) In May, 1983, failing to maintain a sufficient balance in their checking account and proffering a check for $1,978 to TIFCO drawn on insufficient funds, in violation of § 175(4), (12), and (13);

(4) In February, 1983, failing to maintain a sufficient balance in their checking account and proffering a check for $7,105 to Rockwood drawn on insufficient funds, in violation of § 175(4), (12), and (13);

---

1. At all relevant times during this proceeding, those parts of § 175 authorized the Commissioner to suspend or revoke a license upon a finding that the holder:

"(1) Has wilfully violated any provision of this article or of any other law of this State relating to insurance as herein defined, or relating to another type of insurance; or

\* \* \* \* \* \*

(4) Has misappropriated, converted or unlawfully withheld money belonging to an insurer, agent, broker, beneficiary, or an insured; or

\* \* \* \* \* \*

(6) Has committed fraudulent or dishonest practices in the business of insurance; or

\* \* \* \* \* \*

(11) Has failed or refused, upon demand, to pay over any money in his hands which belongs to an insurer, agent, broker, or other person entitled to receive the same; or

(12) Has otherwise shown lack of trustworthiness or lack of competence to act as agent or broker; or

(13) Is not or does not intend to carry on business in good faith and hold himself out to the public as an agent or broker...."

(5) From March to July, 1983, failing to pay their account current to Rockwood in the amount of $11,500, in violation of § 175(11);

(6) From November, 1982, to March, 1983, failing to keep their account current with Monarch in the amount of $15,-342, in violation of § 175(11);

(7) From June, 1983, to December, 1983, instituting fictitious premium finance agreements in the names of Bootlegger, A & A Himes, and T.I.A.B., in violation of § 175(1), (6), (12), and (13); and

(8) Failing to pay a certain civil statutory penalty of $350 within 30 days, in violation of § 175(10).

On February 7, 1984, following a hearing before a hearing officer, the Commissioner found that appellants had indeed failed to maintain sufficient balances and had issued checks drawn on insufficient funds, as alleged in charges 2 through 6, which amounted to violations of § 175(4), (11), (12), and (13). With respect to charges 1 and 7, the Commissioner found:

"It is undisputed that the premium finance proceeds were, in fact, deposited in the Respondent's account and never paid to Monarch Insurance Company. However, the evidence is less conclusive regarding the fictitious nature of the three aforementioned insureds. Although the insureds listed the same post office box mailing address and the only payments received apparently were sent from the Respondent's agency, the Respondent stated that these were second-year renewals, and there was some indication that the carriers had had some previous contact with these insureds."

From this he concluded that appellants had violated § 175(1), (4), (6), (11), (12), and (13).

The eighth charge, dealing with the civil penalty, was dismissed when evidence was presented that appellants had paid the penalty.

Upon these findings "together with the seriousness of the violations," the Commissioner revoked appellants' licenses and ordered appellants to make full restitution to Rockwood, Monarch, and TIFCO within 60 days or in accordance with any existing agreement between the parties.

Appellants filed an appeal to the Circuit Court for Montgomery County, contending that the Commissioner's order was not supported by the evidence presented at the hearing.

Most of the underlying facts found by the Commissioner, according to the court, were "undisputed on appeal." The two factual findings that *were* contested were (1) that appellants received a $1,335 down payment from Bootlegger on a policy financed by TIFCO, and (2) that appellants had actually collected the premiums due by it to Monarch. The court found the first of those findings to be supported by evidence, but found no evidence to support the second. In pertinent part, the finding made by the Commissioner on the Monarch account was that the account was past due in the amount of $17,251 "representing various premiums *collected* by [appellants]...." (Emphasis added.) The court modified that finding to read "representing various premiums *due to be collected* by [appellants]...." (Emphasis added.)

The court pointed out that "[t]he bulk of Appellants' appeal" concerned not the Commissioner's findings of fact, but rather his conclusions of law; *i.e.*, that appellants' actions constituted the statutory violations found by the Commissioner. The court examined those contentions and concluded that the Commissioner was correct in finding violations of § 175(1) (wilful violation of art. 48A), (4) (misappropriation, conversion, or unlawful conversion of money belonging to an insurer), and (12) (lack of trustworthiness or competence), but that he erred in finding violations of § 175(6) (fraudulent or dishonest practices), (11) (failed or refused, on demand, to pay over money in their hands belonging to a person entitled to receive it), and (13) (does not intend to carry on business in good faith). These latter

conclusions, in effect, served to vacate the Commissioner's findings with respect to charge 7 and limit the effect of his findings as to charges 1 through 6 to § 175(1), (4), and (12).[2]

With these modifications—adding the words "due to be" to the one factual finding and reversing the Commissioner's conclusions that § 175(6), (11), and (13) had been violated—the court affirmed the Commissioner's order. Appellants now turn to us, complaining that the court "erred in modifying and then affirming the decision of the Insurance Commissioner." They make two arguments: first, as a matter of statutory construction, the court had no authority to modify and affirm, and second, that, having found insufficient evidence to sustain violations under § 175(6), (11), and

---

**2.** The record is a little unclear with respect to the first charge which, as noted (p. 1, *ante*), appears to contain two related, but distinct, elements—the fraudulent completion of a premium finance agreement in the name of Bootlegger, and appellants' retention of the proceeds of $6,531 in their account, all in violation of § 175(1), (4), (6), (11), (12), and (13). The court made clear that it found no clear and convincing evidence of fraud or dishonesty, which would seem to imply, and require, a rejection of at least the first element. On the other hand, the court sustained the Commissioner's finding of a violation of § 175(1)—wilful violation of the insurance laws—which was alleged only in connection with the first charge.

In discussing the Bootlegger account in connection with the alleged violation of § 175(4)—unlawful withholding of money due an insurer—the court said:

"The collection manager of Monarch testified that Monarch was never paid the premium due on The Bootlegger account. It is undisputed that Appellant received a check from TIFCO, per the financing agreement, with which to pay that premium. It is clear that the TIFCO check, money belonging at least in part to an insurer (depending on the account payment arrangement existing between Appellant and Monarch), was misappropriated or unlawfully withheld in violation of subsection (4)."

Implicit from those statements is a finding that appellants' retention of the money due Monarch was wilful, which would, in turn, suggest an affirmance as to the second element in the first charge. That would permit a finding that § 175(1) had been violated.

As appellants have not raised this as an issue before us, and as we think that there was, in any event, sufficient evidence before the court to sustain a finding that § 175(1) had been violated based on the wilful retention of the $6,531, there is no reason either to reverse on this ground or to remand for any further clarification.

(13), the court was obliged to remand the case to the Commissioner so that he could determine whether revocation of the license was still an appropriate penalty.

### (1) *Statutory Construction Can The Court Modify And Affirm?*

The court's authority, in reviewing orders of the Insurance Commissioner, other than those approving or disapproving rate filings, is governed by Md.Code Ann. art. 48A, § 40(4) and (5). They provide:

"(4) *Hearing de novo.*—Upon receipt of such transcripts and evidence the court shall hear the matter d[e] novo as soon as reasonably possible thereafter. Upon the hearing of the appeal the court shall consider the evidence contained in the transcript, exhibits, and documents therein filed by the Commissioner, together with such additional evidence as may be offered by any party to the appeal.

(5) *Judgment.*—The court may affirm the decision of the Commissioner or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(i) In violation of constitutional provisions; or

(ii) In excess of the statutory authority or jurisdiction of the Commissioner; or

(iii) Made upon unlawful procedure; or

(iv) Affected by other error of law; or

(v) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

(vi) Against the weight of competent, material and substantial evidence in view of the entire record, as submitted by the Commissioner and including d[e] novo evidence taken in open court; or

(vii) Unsupported by the entire record, as submitted by the Commissioner and including de novo evidence taken in open court; or

(viii) Arbitrary or capricious."

Reading the first part of § 40(5) literally, with the semicolon in place, appellants urge that the court had no authority to modify and affirm the Commissioner's decision—that it could affirm or remand, as one set of options, or it could reverse or modify, as another, independent set of options. We do not share that reading of the statute.

It is evident that the Legislature intended to give the court all four options, equally. Those are the normal options given to a court on judicial review of an administrative agency's order, whether the appeal is strictly on the record made before the agency or additional evidence is allowed at the judicial level. *See* Md.Code Ann. State Gov't art., § 10–215; Md.Rule B13. *See also Government Emp. Ins. v. Ins. Comm'r,* 40 Md.App. 201, 207, 389 A.2d 422 (1978), construing § 40(5) as permitting the trial court "to affirm, remand for further proceedings, reverse or modify the decision of the Commissioner." Although the thought could perhaps have been expressed a bit more artfully, it is apparent that the Legislature intended to make clear that a court could reverse or modify a decision of the Commissioner only if it found one of the enumerated types of error in the Commissioner's decision. In contrast, the finding of such an error is not a prerequisite for the court either to affirm or to remand. That, we think, is the only message that the semicolon separating "affirm" and "remand" from "reverse" and "modify" was intended to convey.

Accordingly, we do not believe that the strict language of § 40(5), especially when read in conjunction with § 40(4), precludes a court from modifying one or more parts of the Commissioner's order and then affirming the order as modified. If, through modification, the court can appropriately correct an error in the Commissioner's decision, there is no purpose to be served by a remand.

### (2) *Should The Court Have Remanded?*

Appellants note that the Commissioner's decision to revoke their licenses rested upon findings that appellants

had violated six different provisions of § 175, including subsections (6), (11), and (12). The court found insufficient evidence to sustain those three violations. In light of that conclusion, appellants argue, the court should not have affirmed the revocation of their licenses but should instead have remanded the case to the Commissioner so that he could determine whether revocation remained an appropriate sanction.

Were appellants proceeding under the Administrative Procedure Act (State Gov't art., § 10–215), they might have a more arguable point. Under that Act, the scope of judicial review is quite limited. Except as to questions of procedural irregularity, the court must decide the issues raised in the appeal strictly on the basis of the record made before the agency; it may not consider any other evidence and it may not place its own interpretation upon the evidence before the agency so as, effectively, to substitute its judgment for that of the agency. *See*, in general, *Bernstein v. Real Estate Comm'n*, 221 Md. 221, 156 A.2d 657 (1959), *app. dism.* 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960).

In that setting it could be more plausibly argued that where (1) an agency has determined that a licensee has committed several violations, any one or more of which might justify a range of sanctions from mere reprimand to license revocation, (2) the agency decides upon revocation—the most severe sanction—apparently basing that decision upon the aggregate conduct of the licensee rather than upon any one violation to the exclusion of others, and (3) the court subsequently determines that the agency should not have considered certain of those violations because the evidence was insufficient to demonstrate their commission, the court would effectively be substituting its discretion for that of the agency if it were nevertheless to affirm the sanction.

Whether such an argument would necessarily be successful in an Administrative Procedure Act setting, it cannot be

successful here, for the scope of judicial review under art. 48A, § 40 is significantly broader than it is under the APA. As noted, § 40(4) provides for a *de novo* hearing, in which the court may consider not only the record made before the Commissioner but also such additional evidence as may be offered in the judicial proceeding. The judicial proceeding under § 40 is thus more akin to that under the Workers' Compensation law than to an APA review. *See Md. Bureau of Mines v. Powers*, 258 Md. 379, 265 A.2d 860 (1970), and *Montgomery Ward & Co. v. Bell*, 46 Md.App. 37, 415 A.2d 636 (1980), discussing the scope of review in workers' compensation cases.

The Court of Appeals alluded to this broadened scope of review in *Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 236 A.2d 282 (1967). The issue there involved the scope of review under what is now § 242B—pertaining to orders approving or disapproving rate filings, which were regarded as quasi-legislative in nature. In those cases, the scope of review is limited, being essentially equivalent to APA review. At 304–05, the Court compared and contrasted the two types of review, noting as to the review of a rate filing order:

"That the legislature did not intend the court to make independent findings of fact or inference or to substitute its judgment for that of the Commissioner is strongly suggested by the fact that, *unlike appeals from judicial actions of the Commissioner*, the appeal in legislative actions is not de novo and the reviewing court does not hear additional evidence.... We read the direction [in current § 243B(2)] to the court to determine whether or not the Commissioner's order is supported by a preponderance of the evidence to mean that the court must rule whether or not the Commissioner followed the legislative directive to reach a factual conclusion in the matter before him on the basis of a preponderance of the evidence, *not to make its own independent decision whether it would have valued the evidence in the same way*

*and reached the same result."* (Citation omitted; emphasis added.)

The ability of a court to make its own evaluation of the evidence is implicit from the concept of a *de novo* hearing. It seems implicit as well from the Court's remarks in the *Nat'l Bureau* case that § 40(4) and (5) provide that authority.

Upon this analysis, it is apparent that, while the court could have remanded the case to the Commissioner for a reevaluation of the sanction, and while in many instances that might be the preferred course of action, it was nevertheless competent for the court to make its own evaluation of the evidence and decide for itself whether the sanction of revocation, initially selected by the Commissioner, remained appropriate in light of the revised findings.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.