521 A.2d 761

**Gerald A. MILLER**

v.

**INSURANCE COMMISSIONER, State of Maryland.**

**No. 635, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

March 4, 1987.

Jonathan A. Azrael (Keith S. Franz, on the brief), Towson, for appellant.

Randi F. Reichel, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief for appellee, Insurance Comm'r), Thomas Waxter, Jr. (Donna L. Jacobs and Kristine K. Howanski, on the brief for appellee, General Accident Ins. Co.), Baltimore, for appellees.

Argued before ALPERT, WENNER, and POLLITT, JJ.

POLLITT, Judge.

This is an appeal from a judgment of the Circuit Court for Baltimore City (Bothe, J.) affirming the order of the State Insurance Commissioner of Maryland.

On October 15, 1985, General Accident Insurance Company of America (General Accident) notified Gerald A. Miller, M.D., that his professional liability insurance policy with

General Accident would be cancelled as of December 4, 1985.[1]  On November 27, 1985, Dr. Miller requested that the Insurance Commissioner investigate that cancellation, pursuant to § 234A.[2]  After investigation the Commissioner determined, without a hearing, that the cancellation was not in violation of any provisions of the Maryland Insurance Code.  Pursuant to § 40(1), Dr. Miller appealed that decision to the Circuit Court for Baltimore City and, at the same time, moved for a stay of the Commissioner's decision, pursuant to § 40(2).  On April 8, 1986, Judge Bothe denied the stay and affirmed the Commissioner.  From that judgment, Dr. Miller appeals to this Court.

The appellant, Dr. Miller, and the appellees, General Accident and the Commissioner, each state the questions presented in varying form, reflecting their respective positions, but we perceive them to be substantially as follows:

I.   Whether the Commissioner correctly determined that General Accident was justified in cancelling Dr. Miller's policy on the grounds of fraud and misrepresentation in the application for the policy without further evidence of standards reasonably related to General Accident's economic and business purposes?

II.  Whether General Accident was estopped from cancelling Dr. Miller's policy by its knowledge of the misrepresentations prior to the latest renewal of the policy?

## Facts

In August of 1982, Dr. Miller obtained professional liability insurance with General Accident.  He previously had

---

**1.**  Maryland Code (1957, 1979 Repl. Vol.) Art. 48A, § 240A(c) requires that a written notice of intention to cancel a policy of insurance, for a reason other than nonpayment of premium, must be sent to the insured not less than 45 days prior to the date of the proposed cancellation.

**2.**  All references to sections herein, unless otherwise specified, are to various sections of Art. 48A, the Maryland Insurance Code.

been insured by the Medical Mutual Liability Insurance Society of Maryland but had terminated that insurance after a dispute with Medical Mutual over a malpractice claim which resulted in a verdict against him for $500,000, including $200,000 in punitive damages.[3] That case precipitated an investigation of Dr. Miller before the Commission on Medical Discipline of Maryland. That investigation began in January of 1983 and continued through January of 1985, when the Commission entered an order noting severe deficiencies in Dr. Miller's practice and suspending his license to practice medicine unless he complied with numerous conditions imposed by that order.

In August of 1983 Dr. Miller filed a renewal application with General Accident. Question 22 on that application was "Have you ... ever been the subject of investigative or disciplinary proceedings or reprimand by a governmental or administrative agency, hospital or professional association?" Dr. Miller answered, "No." The renewal application contained a warranty stating:

It is warranted ... that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy.

A standard condition of the policy was:

1. Application. By acceptance of this policy, the Named Insured agrees that the statements in the application are his or her representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Named Insured and the Company, or any of its agents, relating to this insurance.

On June 23, 1984, Dr. Miller again applied for renewal of the policy for the period of August 7, 1984, through August

---

**3.** *See Medical Mut. Liab. Ins. v. Miller,* 52 Md.App. 602, 451 A.2d 930 (1982).

7, 1985. Question 13 of that application was identical to question 22 of the previous application, and, again Dr. Miller answered, "No." That application also contained the following:

REPRESENTATION: It is represented that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy.

A signed but undated renewal application was filed by Dr. Miller shortly before August 7, 1985. On this application, for the first time, Dr. Miller answered "yes" to the question as to whether he had been the subject of investigative or disciplinary proceedings, and attached to the application a copy of the findings and order of the Commission on Medical Discipline, dated January 29, 1985. This revelation was not made in time for General Accident to give the 45 days notice of nonrenewal required by § 240A.

After review of this information, Shand, Morahan & Company, Inc. (Shand), underwriting managers for General Accident, sent Dr. Miller the aforementioned notice of cancellation. A letter accompanying that notice stated, in part:

It has recently come to our attention that you have been the subject of an investigation by the Commission on Medical Discipline, which on January 29, 1985 issued an Order imposing certain conditions on your practice of medicine. Our information indicates that this investigation was undertaken as a result of a complaint filed in connection with your performance of a lens implant on November 17, 1978. Your various applications for renewal of your coverage prior to 1985 do not disclose this investigation. For that reason and because you do not meet our underwriting standards, we enclose herewith a Notice of Cancellation of any policy coverage which may exist by operation of law.

Some six weeks after receipt of the notice of cancellation, Dr. Miller wrote the Insurance Commissioner, requesting an

investigation to determine if the action by General Accident was justified. In that letter to the Commissioner, Dr. Miller wrote, in part:

> I had terminated my insurance with Medical Mutual on 8/83 due to my distress with the situation that had unfolded in the past. I joined General Accident unaware at that time of any disciplinary action. On the renewal application of 8/84, I did not alert them to the investigation as I did not believe that it would end the way it did and also because I was fearful that it would influence their consideration of me as an insured.[4]

Pursuant to § 234A(a), the Commissioner undertook an investigation and directed General Accident to continue the policy in effect pending the issuance of his findings. On January 23, 1986, the Commissioner found, in part:

> Under the provisions of Article 48A, Section 234A(a) of the Annotated Code of Maryland the Insurance Division can take an active interest in an underwriting decision when that decision is arbitrary, caprious [sic], and/or discriminatory, or if the action of the insurer can be demonstrated to be within the insurer's stated and accepted business and economic purposes.

> The criteria used in making a determination as to whether an insurer is in violation of Section 234A(a) is the reason cited by the insurer must actually exist, and must be shown to be factual and genuine.

> In the instant matter, Shand, Morahan and Company, Inc. and General Accident Insurance Company of America has sought to cancel policy numbered MG100912 and its subsequent renewals, citing as reason for its action misrepresentation by the insured.

> Section 233 of the Code provides that an applicant should not knowingly or make any "false or fraudulent state-

---

**4.** As previously noted, Dr. Miller actually had been insured with General Accident since August of 1982, and *two* renewal applications had not disclosed the investigation.

ment or representation in or with reference to any application for insurance ..."

The interpretation of this is that the applicant knowingly and willfully misrepresents himself and the risk materially, with the intent of gaining insurance where none would normally be provided if the misrepresentation or the false statement had not been provided.

The insurer shows that the applicant, on applications for renewal of coverage for policy periods August 7, 1983 through August 7, 1984, and August 7, 1984 through August 7, 1985, answered "no" to the question; "Have you ... (a) Ever been the subject of investigative or disciplinary proceeding or reprimand by a governmental or administrative agency, hospital or professional association?" We noted that each application was reportedly signed and dated by the applicant.

Further the insurer shows that the applicant was apprised of a finding by a Peer Review Committee of the Medical and Chirurgical Faculty of the State of Maryland operating at the request of the Commission on Medical Discipline. This review was initiated in June of 1983. The insurer asserts that the applicant's knowledge of this Peer Review pre dates his application for renewal coverage, signed and dated August 1, 1983. Therefore, the insured should have answered the aforementioned question affirmatively.

In his letter of protest to the Insurance Division, Dr. Miller stated that the Commission on Medical Discipline "... began an investigation on me in January, 1983." Further, Dr. Miller's letter reads, "I joined General Accident unaware at that time of any disciplinary action. On the renewal application of August 1984, I did not alert them to the investigation as I did [not] believe that it would end the way it did and, also because I was fearful that it would influence their consideration of me as an insured."

The question of a rescission of the prior policy periods would be based upon the materality of the concealment.

The initial findings of the Peer Review was such a nature that it could have affected the underwriting decision of the insurer. There is some question of whether Doctor Miller's failure to disclose factual information for the policy period August 7, 1983 through August 7, 1984 was deliberate. The action of the insurer is not restrained by the willful non-disclosure of material information, but that the non-disclosure altered underwriting decision. However, by his own admission Dr. Miller deliberately withheld information from the insurer for the policy period August 7, 1984 through August 7, 1985. This matter is currently before the Courts.

Based upon the information presented, the Insurance Division does not find the proposed action of the Shand, Morahan and Company, Inc. and the General Accident Insurance Company of America to be in violation of the Maryland Insurance Code by cancelling the current policy.

Under provisions of Article 48A, Section 35(2) of the Annotated Code of Maryland an aggrieved party may request a Hearing within thirty (30) days of this letter. Such request for Hearing must specify the grounds upon which relief is to be sought at the Hearing.

Dr. Miller accepted the Commissioner's invitation and requested a hearing. He asserted that General Accident had "not explained any details of its underwriting practices and procedures to show that it would not have issued the policy in question" but for the misrepresentations, which he stated were not knowing or wilful, and that "the decision to cancel the policy ... is arbitrary, capricious and discriminatory and is not based on factual or genuine criteria."

The Commissioner denied the requested hearing, stating:

The initial decision of this office under the date of 23 January 1986 was based upon a violation of Article 48A, Section 233 of the Annotated Code of Maryland. This decision was supported by your client's initial letter requesting the assistance of this office.

The information provided in your request for Hearing is not sufficient to change or cause a reconsideration of the original determination.

Under the provisions of Section 40, the aggrieved party may appeal a refusal to grant a Hearing to the Baltimore City Court, by filing written notice of appeal in such court and by filing a copy of such notice with the Commissioner.

Dr. Miller's appeal to the Circuit Court for Baltimore City was accompanied by a motion to stay the Commissioner's order, pursuant to § 40(2). The motion was scheduled for hearing before Judge Bothe on April 8, 1986.

After an off-the-record discussion with counsel, Judge Bothe determined that the evidence necessary for a decision as to whether to grant the stay would be much the same as the evidence on the merits. She further reasoned that a failure to grant the stay would have the same effect as an affirmance of the Commissioner on the merits, since the stay previously granted by the Commissioner would expire on the following day. Counsel for Dr. Miller objected to proceeding on the merits, alleging that Dr. Miller was not available to testify, whereupon the judge said:

I am quite willing to forego any decision at all today, but Dr. Miller isn't going to like that because tomorrow, by operation of law, because I believe the thirty days of the current stay issued by the Commissioner will expire to-day—Is that right?

Mr. Azrael (Counsel for Dr. Miller): It will expire tomorrow.

Trial on the merits proceeded, at which counsel for Dr. Miller offered documentary evidence that the company had issued a binder for the policy on July 30, 1985; that Dr. Miller had tendered a check in full payment of the premium; and that on March 20, 1985, some four months prior to the last renewal, counsel employed by the insurance company to represent Dr. Miller in a medical malpractice case, had written a letter to the underwriters, in which he advised

them, among other things, that, as a result of a previous lawsuit, "proceedings were brought against Dr. Miller by the Medical Society," and that, on January 29, 1985, Dr. Miller had been placed on probation for three years. He proffered that Dr. Miller would testify, if present, as follows:

> He would say that when he made the applications for insurance in 1983 that no disciplinary proceeding had been instituted against him, and, for that reason, he did not—he answered the question "no" in the application. He would say that when the renewal application for 1984 was submitted, again there had been no finding against him and, rightly or wrongly, he answered the question "no"; that when the Commission finally did issue an order in January of 1985 that he was aware that the insurance company, Shand, Morahan, had been notified of this by Mr. Rosner's letter because a copy of the letter was sent to Dr. Miller and, therefore, when he made his renewal application in July of 1985 he again disclosed the existence of this; he paid the premium in good faith; he believes he was insured; he did not misrepresent anything on that 1985 renewal application.

While not formally introduced in evidence, all exhibits and documents presented to and considered by the Commissioner were placed before Judge Bothe, argued by all counsel and considered as part of the record.

Judge Bothe denied the motion to stay and affirmed the order of the Commissioner. Hence this appeal.

■ Preliminarily, appellant asserts that, because the documents relied on by the Commissioner were never formally admitted in evidence, the record does not support the Commissioner's findings. This procedural oversight was not brought to the attention of the trial judge and not ruled on by her, so it is not properly before us. Rule 1085. In any event, the record is clear that *all* parties treated the documents as properly before the court and argued extensively

as to their effect. The error, if any, was in no way prejudicial.

I

The basic standard for reviewing the administrative finding by the Insurance Commissioner is whether the finding is supported by "substantial evidence." This means whether "a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Lumbermen's Mut. Casualty v. Ins. Comm'r*, 302 Md. 248, 266, 487 A.2d 271, 280 (1985), and cases there cited. Section 40(5) of the Insurance Code provides that the court may reverse or modify the decision of the Commissioner if substantial rights of the petitioner may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(i) In violation of constitutional provisions; or

(ii) In excess of the statutory authority or jurisdiction of the Commissioner; or

(iii) Made upon unlawful procedure; or

(iv) Affected by other error of law; or

(v) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

(vi) Against the weight of competent, material and substantial evidence in view of the entire record, as submitted by the Commissioner and including de novo evidence taken in open court; or

(vii) Unsupported by the entire record, as submitted by the Commissioner and including de novo evidence taken in open court; or

(viii) Arbitrary or capricious.

While the company had the burden of persuasion to satisfy the Commissioner that the cancellation of the policy was justified; § 234A(a); *Gov't Employees Ins. v. Ins. Comm'r*, 273 Md. 467, 330 A.2d 653 (1975), on appeal to the circuit court, the burden shifted to the petitioner to show that the administrative proceedings prejudiced any of his substantial rights. *Nuger v. Insurance Comm'r*, 238 Md.

55, 61, 207 A.2d 619, 622 (1965). In applying the substantial evidence test, a court should not substitute its judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken, and the decision must be viewed in the light most favorable to the agency, since decisions of administrative agencies are prima facie correct. *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 513, 390 A.2d 1119, 1124 (1978).[5]

Section 234A, originally enacted to proscribe discriminatory underwriting, has been expanded to provide that no insurer may cancel or refuse to underwrite or renew an insurance risk except by the application of standards which are reasonably related to the insurer's economic and business purposes.[6] *Lumbermen's Mut. Casualty v. Ins. Comm'r, supra. See also St. Paul Fire & Mar. v. Ins.*

---

**5.** We recognize that *Bulluck* is construing the Administrative Procedure Act (Maryland Code (1984) § 10–201 et. seq. of the State Government Article), specifically made not applicable to the Insurance Division by § 10–202(a)(3)(iv), but the provision for judicial review found in § 10–215 and those in § 40(5) of the Insurance Code are so nearly identical, the test should be the same. *Nuger, supra,* 238 Md. at 61, 207 A.2d at 621. The only substantial difference between the two is that § 40 gives any party the right to offer additional evidence before the court. *Government Emp. Ins. v. Ins. Comm'r,* 40 Md.App. 201, 389 A.2d 422 (1978).

**6.** Section 234A(a) reads as follows:

No insurer, agent or broker shall cancel or refuse to underwrite or renew a particular insurance risk or class of risk for any reason based in whole or in part upon race, color, creed, sex, or blindness of an applicant or policyholder or for any arbitrary, capricious, or unfairly discriminatory reason. In the case of a cancellation of or refusal to renew a policy, provided the insured requests of the Commissioner that a review be undertaken of the insurer's action prior to the effective date of termination of the policy, and provided the Commissioner initiates action toward issuance of a finding in accord with § 234C, such policy shall remain in effect until such finding is issued. No insurer, agent or broker may cancel or refuse to underwrite or renew a particular insurance risk or class of risk except by the application of standards which are reasonably related to the insurer's economic and business purposes. At any hearing to determine whether there has been a violation of this section, the burden of persuasion shall be upon the insurer to demonstrate that

*Comm'r,* 275 Md. 130, 339 A.2d 291 (1975); *Gov't Employees Ins. v. Ins. Comm'r, supra; Insurance Comm'r v. Allstate Ins.,* 268 Md. 428, 302 A.2d 200 (1973).

■ We believe there was more than adequate evidence before the Commissioner to support his finding that the proposed cancellation did not violate § 234A. The company had stated to the Commissioner, in part:

General Accident has completed its investigation, and it is evident that Dr. Miller was aware that he was under investigation by the Committee and Commission prior to and at the times of his application for medical malpractice insurance on August 7, 1983 and June 23, 1984. Dr. Miller's answer to question 22(a) in the August 7, 1983 application was false because he denied the existence of the then pending investigation by the Commission and Committee. Dr. Miller's answer to question 13A in the June 23, 1984 application was false because it similarly denied the existence of the investigation by the Commission and Committee.

Dr. Miller's false answers related to matters material to the acceptance of the risks, and materially affected the hazards assumed. Had the true state of facts been known to General Accident, the two renewal policies, effective August 7, 1983 through August 7, 1984 and August 7, 1984 through August 7, 1985, would not have been issued to Dr. Miller.

Because of the misrepresentations in the applications, the material deficiences in his practice of medicine, and his unsatisfactory claims history, General Accident maintains that it is justified in cancelling the policy.

As noted by the Commissioner in his findings, it was evident that Dr. Miller knew the misrepresentations were material, when he gave, as a reason for not revealing the investigation, his fear that to do so "would influence their consideration of me as an insured."

---

the cancellation, or refusal to underwrite or renew is justified under the standards so demonstrated.

Based on these facts, the Commissioner determined that Dr. Miller's nondisclosure altered the company's underwriting decision, a conclusion "a reasoning mind reasonably could have reached." Nothing in the "de novo" evidence offered before the trial judge alters that conclusion. Dr. Miller's proffered testimony before the court was substantially the same as his presentation to the Commissioner in his letter of November 27, 1985.

We see nothing in either the legislative history or the judicial interpretations of § 234A suggesting that it was ever intended to abrogate the general rule of the law of contracts that when a party is induced to enter into a contract by fraud or *material* misrepresentation, the contract is voidable as against the party making the misrepresentation. This rule has been applied to insurance contracts on numerous occasions. *See Semelsberger v. Hatem*, 267 Md. 43, 296 A.2d 398 (1972); *Stumpf v. State Farm Mut. Auto. Ins.*, 252 Md. 696, 251 A.2d 362 (1969); *Silberstein v. Life Insurance Co.*, 189 Md. 182, 55 A.2d 334 (1947). *See also Fitzgerald v. Franklin Life Ins. Co.*, 465 F.Supp. 527 (D.Md.1979), *affirmed* 634 F.2d 622 (4th Cir.1980); *Hofmann v. John Hancock Mutual Life Ins. Co.*, 400 F.Supp. 827 (D.Md.1975). The statute is simply another way of saying what is "material." If the misrepresentation is not "reasonably related to the insurer's economic and business purposes," it is not "material." In *Gov't Employees Ins. v. Ins. Comm'r, supra*, Judge Levine, for the Court, noted:

It is important to note, however, that the Commissioner does not contend that the proposed non-renewals in these two cases violated §§ 234A or 240F, nor, indeed, could such a contention be successfully maintained. Neither of the reasons assigned for non-renewal, *viz., failure to make a complete disclosure* or accumulation of traffic violations, brings this case within the ambit of § 234A or § 240F.

273 Md. at 480, 330 A.2d at 660 (emphasis added).

While that case was concerned primarily with the construction of § 240AA, dealing with automobile liability in-

surance, the above *dictum* indicates that material misrepresentations remain as valid reasons for avoiding a contract despite the substantive requirements of § 234A.

In *Fitzgerald,* the court noted that "the Court, itself, can take judicial notice of the fact that certain information is 'patently material' to the risk assumed." *Id.* at 540. We think Dr. Miller's misrepresentations involve just such "patently material" information. The undisclosed information revealed that Dr. Miller was the subject of an ongoing investigation by his peers of serious deficiencies in his practice. The information also revealed that Dr. Miller was charged with not being competent to render the type of services he was performing. This investigation was precipitated by the concerns of a formally constituted body of experts in Dr. Miller's field. The Insurance Commissioner had before him substantial evidence to support a determination that the material misrepresentations "were of such probative force as in all reasonable probability, if brought to the knowledge of the company, would have precluded the issuance of the policy." *Hofmann, supra,* at 834.[7]

In *Lumbermen's Mut. Casualty v. Ins. Comm'r, supra,* relied on by Dr. Miller, Judge Eldridge discussed the revision of § 234A by Chapter 752 of the Laws of 1974, which added the requirement that no insurer may cancel or refuse to underwrite or renew an insurance risk "except by the application of standards which are reasonably related to the insurer's economic and business purposes." That case dealt with attempted cancellations of automobile insurance of drivers with more than one accident or traffic violation within a three-year period. The Court affirmed the decision of the Commissioner that the insurers failed to prove that surcharges under their approved rating plans would not compensate them for the increased risk. It found that the

---

7. Both *Hofmann* and *Fitzgerald* involved the question of material misrepresentation in an application for insurance after § 234A was amended to its present form. Neither court indicated that there was any relation between § 234A and the issue before it.

real complaint of the insurers was over the adequacy of their approved rating plans and that such a controversy is not encompassed by § 234A. We do not read that case as authority for the proposition that an underwriting standard providing for cancellation of a policy obtained by material misrepresentations is not reasonably related to the insurer's economic and business purposes.

We hold that both the Commissioner and Judge Bothe properly found that Dr. Miller had made material misrepresentations in two renewal applications, that General Accident relied on these misrepresentations, and that the cancellation was justified under standards reasonably related to the insurer's economic and business purposes.

## II

At the "de novo" hearing before Judge Bothe, Dr. Miller produced a two-page letter from counsel to the underwriter, concerning a malpractice case. That letter, dated March 20, 1985, contained one line referring to the proceedings brought against Dr. Miller by the "Medical Society." Based on this evidence, appellant asserts General Accident now is estopped from cancelling his policy. We disagree.

In *Johns Hopkins Hosp. v. Lehninger*, 48 Md.App. 549, 429 A.2d 538, *cert. denied*, 290 Md. 717 (1981), Judge Couch (now associate judge of the Court of Appeals) said for this Court:

> 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 804 (5th ed. 1941), defines equitable estoppel as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position from the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy." (Footnote omitted.) *See Pearre v. Gross-*

*nickle,* 139 Md. 1, 8–9, 114 A. 725, 728 (1921); *Rodgers v. John,* 131 Md. 455, 462, 102 A. 549, 551 (1917).

Whether the doctrine is to be applied in a given case is dependent solely upon the particular facts and circumstances of that case. *Rodgers v. John, supra* at 462, 102 A. at 551. Unless the party against whom the application of the doctrine is sought has been blameworthy "of some unconscientious, inequitable or fraudulent act of commission or omission upon which another has relied and been misled to his injury, the doctrine will not be applied." *Id.; Pearre v. Grossnickle, supra,* 139 Md. at 9, 114 A. at 728–29. *See also Savonis v. Burke,* 241 Md. 316, 319–20, 216 A.2d 521, 523 (1966); *Bayshore Indus., Inc. v. Ziats,* 232 Md. 167, 176, 192 A.2d 487, 492 (1963); *Dixon v. Process Corp.,* 38 Md.App. 644, 382 A.2d 893, *cert. denied,* 282 Md. 731 (1978), in which we held that the "clear and convincing proof" standard applied to constructive as well as actual fraud in estoppel cases. Some form of fraud, actual or constructive, is an essential element of equitable estoppel in Maryland case law. *Cityco Realty Co. v. Slaysman,* 160 Md. 357, 363, 364, 153 A. 278, 281 (1931), cited in *Bean v. Stuart Petroleum, supra* [244 Md. 459, 224 A.2d 295 (1966)].

48 Md.App. at 563–64, 429 A.2d at 546.

■ There is no evidence in this case that General Accident was blameworthy of any "unconscientious, inequitable or fraudulent act of commission or omission" upon which Dr. Miller relied or was misled to his injury.

Citing *Stumpf v. State Farm Mut. Ins. Co., supra,* and *Stiegler v. Eureka Life Ins. Co.,* 146 Md. 629, 127 A. 397 (1925), appellant says "Maryland law is clear that in order to rescind effectively, the insurer must proceed without unreasonable delay after the fraud is discovered to rescind the contract, and to manifest its intention to the other party." The cases cited are inapposite. *Stiegler* concerned the failure of the insurer to rescind within the one-year

period of contestability provided in the policy. The Court said:

> Delay, after the discovery of the fraud but within the period of one year, will furnish evidence that it had decided to affirm the contract. If the defrauded insurance carrier does not communicate the fact of its election to avoid the contract to the assured within the period designated, its right of election is lost.

146 Md. at 642–43, 127 A. at 402.

In that case, the company, by its conduct, recognized the validity of the contract for one entire year and retained the premium paid for that period, then attempted to declare the policy of no effect as of a certain date. Judge Parke said:

> It accepted and retained its benefit under the policy to an arbitrary date of its own selection, and then attempted to invalidate the contract from that day for a fraud perpetrated in its very inception. To approbate and reprobate is fatal to rescission.

146 Md. at 646–47, 127 A. at 404.

In *Stumpf,* the company had some notice of the misrepresentation on April 15, 1965, but did not have full information until September 8th, and sent notice of rescission on October 12th. The Court held the delay was not unreasonable. In the case before us, assuming that the letter of March 20th constituted notice to the underwriting department, it was not until the renewal application was received in late July or August that General Accident obtained full information about the misrepresentation. Even though Judge Bothe commented, at one point, that the company may have been "negligent themselves in failing to investigate and relying on his lies," she obviously ruled that any delay did not amount to a waiver or estoppel under the facts and circumstances of this case.

Finally, appellant cites *Monahan v. Mutual Ins. Co.,* 103 Md. 145, 63 A. 211 (1906), as authority for the proposition

that failure of the company to act, and its continued acceptance of premiums, when it knew *or should have known* of a reason to cancel the policy, constitutes a waiver of the right to cancel. In *Monahan* the misstatements were as to facts peculiarly within the knowledge of the *insurer* and *unknown to the applicant.* The Court said:

> Whilst a misrepresentation of facts which are material to the risk and which, from their very nature, must have been known, or which may reasonably be presumed to have been known by the applicant, but not by the insurer, will render a policy issued upon the faith of their verity, invalid, because the insurer had been induced to write a liability which it would not have assumed if the truth had been frankly disclosed to it; a very different situation is presented when the misstatement concerns a fact peculiarly within the knowledge of the company and not within the knowledge of the applicant. To exonerate an insurer from responsibility on its contract merely because the applicant has misstated a fact which the insurer's own records disclose, or ought to disclose, and which the applicant has no knowledge of at all, would convert this forfeiture clause into a provision, not for the protection of the insurer against deception, but for the infliction of gross injustice upon a confiding and innocent beneficiary.

103 Md. at 157, 63 A. at 212.

Here, unlike *Monahan,* the facts misrepresented were peculiarly within the knowledge of the *insured,* with the insurer's knowledge thereof being fragmentary at best. We also note that General Accident refunded the premium when it learned the details of the misrepresentations. Under these circumstances, Judge Bothe did not err when she found that General Accident was not estopped from cancelling this policy of insurance.

JUDGMENT AFFIRMED.

APPELLANT TO PAY COSTS.